**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KONICA MINOLTA BUSINESS
SOLUTIONS, U.S.A. INC,

        Plaintiff,

v.

                                 Case No. 15-cv-11254

LOWERY CORPORATION d/b/a
APPLIED IMAGING SYSTEMS, INC.,        HONORABLE VICTORIA A. ROBERTS
MATT ARON, ROB BELL, LINDA BOYLE,
STEVE HURT, JON LIVINGSTON,
RANDY MAGNER, and ANNA STEWART,

        Defendants.

_____/

**ORDER ON AMENDED MOTION FOR SANCTIONS (ECF NO. 89)**

      Konica Minolta Business Solutions, U.S.A., Inc. ("KMBS"), the Plaintiff, filed an

Amended Motion for Sanctions against Defendants Lowery Corporation d/b/a Applied

Imaging Systems ("Applied Imaging"), and several individuals: Matt Aron, Rob Bell,

Linda Boyle, Steve Hurt, Jon Livingston, Randy Magner, and Anna Stewart ("Individual

Defendants").  KMBS alleges a host of discovery violations and spoliation of

electronically stored information ("ESI") pertaining to this pending trade secret and

confidential business information litigation.

      For the reasons stated below, KMBS's Motion is **DENIED WITHOUT**

**PREJUDICE**. The Motion may be renewed when discovery is completed; the Court will

then be in a better position to determine whether the elements of Federal Rule of Civil

Procedure 37(e) have been satisfied.

## I.      BACKGROUND

This case has faced procedural hurdles. On several occasions, the parties have

been unable to agree on the scope or process for discovery. The Court sought to

narrow the scope of issues through various methods: entering an order consenting to

the parties' agreed-upon bifurcated discovery plan; staying discovery and ordering

mediation on damages only; and, periodic status conferences to shepherd the

procedural posture of the case onto a less contentious path. Hopefully, this goal was

recently achieved: the Court made decisions requiring answers to be filed, allowing for

Rule 12(c) briefing, appointing a special master, and lifting the discovery stay. The

Court had hoped a ruling on the spoilation Motion would further streamline the case.

Unfortunately, discovery has been disjointed and has proceeded in a way that

makes it difficult to reach a definitive conclusion on this Motion. Namely, the initial

discovery orders only required the parties to give KMBS, mirror images of devices used

at Applied Imaging. Individual Defendants were not required to produce several other

devices and drives that had been connected to networks at Applied Imaging or KMBS.

The Court's order (ECF No. 45) on October 26, 2015, which required Individual

Defendants to produce a broader set of devices that could potentially contain ESI,

required production only to Defendants' counsel and not to KMBS. A subsequent order

(ECF No. 57) required mirror-imaging of these devices. That order did not require

production to KMBS either. Defendants filed a host of objections to the Court's order.

The Court sought to find a solution that would be satisfactory to the parties in an

amended order (ECF No. 65), dated December 9, 2015. Defendants again filed a litany

of objections to what they perceived was too broad a scope of discovery. Ultimately, the

Court entered a stay of discovery (ECF No. 87) to allow the parties to mediate a resolution by focusing only on damages. Their failure to reach an acceptable solution brought discovery, dispositive motions, and this Motion into focus.

The original and amended motions for sanctions were filed months ago in the early stages of discovery. In addition, as a result of the numerous objections to production, many devices containing ESI were not produced to KMBS; Defendants retain possession of those devices and mirror images today. Discovery is ongoing.

## II.    STANDARD OF REVIEW; FRAMEWORK OF BOTH VERSIONS OF RULE 37

This Court's authority to impose sanctions for spoliated evidence arises from the court's inherent power to control the judicial process. See, e.g.,Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). Accordingly, in determining sanctions for spoliation, federal courts apply federal law, which, in this case, is set forth in Rule 37 of the Federal Rules of Civil Procedure. Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009). An amended and entirely new Rule 37 became effective on December 1, 2015.

Significant litigation activity occurred both before and after amended Rule 37 became effective. KMBS filed the Complaint on April 1, 2015, the Amended Complaint on April 27, 2015, and its original Motion for Sanctions on October 21, 2015 – all before the amended Rule 37 became effective. The Amended Motion for Sanctions was filed on January 29, 2016. All briefing on the Amended Motion was done after the effective date of the amended Rule 37.

Previous Rule 37 states:

(e) Failure to Preserve Electronically Stored Information.
Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored

3

information lost as a result of the routine, good-faith operation of an electric information system.

FED. R. CIV. P. 37(e) (effective until Nov. 30, 2015). Under this Rule, courts in this district

followed the Second Circuit's standard for imposition of spoliation sanctions, which

requires a moving party to establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd., No. 06-CV-13143, 2009 WL 998402, at

*1 (E.D. Mich. Apr. 14, 2009) (quoting Residential Funding Corp. v. Degeorge Fin.

Corp., 306 F.3d 99, 107 (2d Cir. 2002).

> Amended Rule 37 states:
>
> (e) Failure to Preserve Electronically Stored Information.
> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e) (effective Dec. 1, 2015).

Now, a Court must determine that four predicate elements are met under Rule

37(e) before turning to the sub-elements of (e)(1) and (e)(2): (a) the existence of ESI of

4

a type that should have been preserved; (b) ESI is lost; (c) the loss results from a party's failure to take reasonable steps to preserve it; and (d) it cannot be restored or replaced through additional discovery. The Court must make findings on each element for each defendant.

Only if all four elements are established can the Court consider sanctions under subsection (e)(1) or subsection (e)(2). These subsections have different requirements before sanctions can be imposed and can lead to different sanctions. In considering subsection (e)(1) sanctions after finding the predicates exist, a court must first find a party is prejudiced by the loss of information. If prejudice is found, the Court may order measures no greater than necessary to cure the prejudice. Significantly, subsection (e)(1) does not contain an "intent" requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith. Under subsection (e)(2), however, before a Court can impose sanctions, it must find that the party that caused the loss "acted with the intent to deprive another party of the information's use in the litigation." Sanctions under (e)(2) include an adverse presumption, an adverse instruction to the jury, or default judgment.

While Defendants argue it is improper for the Court to apply former Rule 37 to KMBS's Amended Motion, they routinely rely on cases applying the former Rule. On the other hand, KMBS asserts that while it is permissible to use the former Rule, it is immaterial which version is used because Defendants' conduct is sanctionable under both. Consequently, the Court must first assess which version of Rule 37(e) governs the pending motion.

Congress provided Courts with flexibility when rules change in the middle of pending litigation. Significantly, it declared:

> . . . The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies. . . .

28 U.S.C. § 2074(a). The Supreme Court reiterated that district courts have discretion to choose which rule to apply to pending cases when it submitted Amended Rule 37 to Congress. 2015 US ORDER 0017 (C.O. 0017) ("[T]he foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.").

KMBS asserts that because the alleged sanctionable conduct occurred prior to amendment of Rule 37 and because the original motion was filed prior to the amendment, it would not be "just and practicable" to apply the new version.

The Court disagrees. While the language of the rules changed, the spirit and principles underlying them have not materially changed in a manner adverse to KMBS.

The new version eliminates the requirement of a culpable state of mind from subsection (e)(1), instead focusing on prejudice to the moving party. Prejudice – properly understood as a party's ability to obtain the proofs necessary for its case – is not an entirely new element; the prior Rule's "relevance" inquiry focused on a party's ability to present its case; the prior Rule required the moving party to show that a "reasonable trier of fact could find that [the lost ESI] would support that claim or

6

defense," which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information.

The remaining elements largely overlap: both require ESI to be unavailable (using similar words of "loss" and "destruction"); both require a duty or obligation to preserve; both require a causal connection between the non-moving party's actions and the loss. While the amended Rule only applies if ESI "cannot be restored or replaced through additional discovery," the Court does not find this requirement so burdensome that it would make application of the amended Rule unjust and impracticable. Indeed, under the former Rule, the Court would not award sanctions in the absence of prejudice, or if the less-intrusive and less-harsh remedy of additional discovery is available to restore or replace lost discovery.

The Court applies the December 1, 2015 amended version of Rule 37(e) to this Motion. If spoliation motions are filed in the future, the Court will apply the amended Rule.

III.     **DISCUSSION**

      **A.     Predicate Elements to Rule 37(e)**

            **1.     KMBS Establishes Duty to Preserve and Loss of Information**

All Defendants had a duty to preserve ESI. They were all either on notice or should have been on notice of this duty. The day after this case was filed, KMBS sent each Defendant a letter that both generally and specifically asked them to preserve ESI. Each letter is addressed to each Defendant with a different mailing address. Several

7

Individual Defendants allege they never received these letters or did not receive them until well after the suit had been initiated. Applied Imaging disagrees and says that it promptly notified each of the Individual Defendants of the duty to preserve ESI. The Court lacks sworn affidavits on the matter or copies of delivery receipts, and, therefore, reserves judgment about who received the letters and when. What is clear is that (1) Applied Imaging received a preservation letter at the time suit was initiated; (2) it employed the Individual Defendants on that day and Applied Imaging should have communicated the need to preserve ESI to them; and (3) at some point in the future all Individual Defendants personally received the letter asking them to preserve ESI. Applied Imaging and the Individual Defendants blame each other for failing to communicate the need to preserve ESI. Further briefing should flush out who received what notice and when.

Several Individual Defendants assert that they could not have known that they had a duty to preserve ESI nor what the scope of that duty entailed. This is unavailing.

The preservation letters tell them all they are being sued. The letters mention that electronically stored information "in any way related to this matter" will be sought and ask for preservation. They specifically mention the types of information sought: documents, e-mails, texts, phone logs and records, internet messages, etc. These letters mention that the federal rules prohibit destruction of evidence, including ESI. These letters ask for the recipients - now Defendants - to take steps to preserve ESI, including discontinuing otherwise permissible routine deletions. In short, the plain meaning of these letters should be clear to most lay persons; there is no ambiguity.

Whether the Defendants believed that they were asked to preserve too much and

8

accordingly decided that they did not need to preserve ESI is a different, but still unpersuasive argument. The federal rules do not cease to apply because a party takes a calculated risk to ignore them or otherwise believes that they do not apply. It is a fundamental maxim that a mistake of law is not a defense. Similarly, any decision to disregard the preservation letters because of their perceived invalidity would have been a calculated risk with predictable consequences.

ESI, for which there was a duty to preserve, was "lost." KMBS and its expert's affidavit provide highly-specific detail of both manual deletions while Individual Defendants were logged into their computers and use of software programs that erase data. For example, "CCleaner," commonly considered anti-forensic software, was run on both of the laptop images that Defendant Livingston produced. It was not installed until July 17, 2015, more than three months *after* this litigation started. If it were a "routine" or "innocent" program, as Livingston suggests, one would have expected to find evidence that it was run on a recurring basis prior to July 17, 2015. KMBS's expert alleges that the same date that CCcleaner was installed, hundreds of files and folders were deliberately deleted while user "jlivingston" was logged onto the computer, including folders named "Applied Imaging Cost Comparisons," "Applied Imaging Customer Files, " and "Applied Imaging Documents."

KMBS's expert found that a folder and subfolder located at "C:\Users\ lboyle\ Documents\ Accounts\ KMAccount- Information\" were deliberately deleted prior to the imaging of Linda Boyle's Applied Imaging computer.

With respect to Defendant Hurt, KMBS alleges other files accessed after the onset of this litigation are no longer present in any form, and that only references to their

prior existence on the MacBook remain.

KMBS's forensics expert located references to Defendant Bell's now-deleted files, and the names of these files indicate content relating to KMBS's pricing information or relating to customers identified on Plaintiff's damages overview.

In its briefs, KMBS presents pages of expert testimony and numerous other examples of deletions by Individual Defendants. This is enough for the Court to conclude, as an initial matter, that ESI was lost.

Defendants argue that any deleted files are not lost because the files exist in other locations; they may re-raise this argument at the close of discovery. In light of the specific nature of the evidence supporting deletions, the Court would expect to see specific factual evidence, on a per file basis, that conclusively establishes that the data and its possession by certain individuals was not lost.

Some Individual Defendants say that they did not delete the files, but other individuals knew their passwords and had access to their computers. The implication is that these other individuals, some of whom were Applied Imaging staff, deleted the files, not the Individual Defendants. These serious allegations contain generic blame-shifting assertions which lack sworn affidavits that accuse someone else of deleting ESI. This will not suffice. If Defendants intend to use finger-pointing as their defense, they must do so in factually-specific sworn affidavits or provide other compelling evidence.

There is strong evidence that ESI was lost, and that it was lost with complete awareness of litigation; Rule 37(e) only requires that it be lost "in the anticipation... of litigation...". Further discovery, including complete production of devices, accounts, and mirror images, will reveal the full scope of ESI losses and whether it is relevant and

10

favorable to KMBS. The Court will discuss specific examples as to each Defendant if a renewed motion for sanctions laying out specifics is filed at the close of discovery.

### 2.   More Discovery is Needed to Determine Whether Reasonable Steps Were Taken and Information can be Retrieved

While KMBS presents compelling examples of sanctionable conduct, Defendants present compelling fact-based arguments as to why certain prerequisite elements of Rule 37(e) cannot be established, precluding the Court from turning attention to subsections (e)(1) and (e)(2). While the Court indicated at a telephone status conference its preference to review a motion for sanctions only once, it is clear that the factual record underpinning the pending Motion is inconclusive, and the Court declines to resolve the sanctions issue at this juncture.

Both parties make requests for further discovery to bolster their positions. KMBS initially seeks default judgment, but is amenable to a lesser sanction coupled with an opportunity to engage in spoliation-specific discovery to determine the full extent of Defendants' destruction and failure to preserve documents. Defendant Bell, whose brief nearly all Defendants adopt by reference, notes that only limited discovery has taken place and Defendants have not been able to conduct discovery to meaningfully respond to KMBS's motion. For example, Defendants assert the need to depose KMBS's expert. The Court will allow spoliation discovery in the normal course of discovery. Further discovery will help all parties. To the extent Defendants produce additional ESI, they can undermine KMBS's assertion that the information is lost. To the extent the produced drives indicate further deletion, Plaintiff can expand the factual basis for sanctions against Defendants and more persuasively bolster its argument that the data is lost and

not replaceable.

Further discovery is especially needed to illuminate elements three and four of Rule 37(e): whether reasonable steps were taken to preserve and whether it can be restored or replaced through additional discovery. KMBS asserts that sanctions are appropriate because several forms of ESI have not been produced. The Individual Defendants claim that the Court stayed production and they have yet to produce ESI pertaining to their personal drives. They say their preservation efforts were reasonable. In addition, all Defendants claim that even if ESI is missing from one place it is available in another location, and, as a result, can be retrieved with additional discovery.

Absent sufficient proof that reasonable steps were not taken, KMBS is not entitled to relief under 37(e), even if it is shown the ESI was lost.  Sanctions are not automatic.

Further, a party cannot be sanctioned where the ability exists to restore or replace the lost ESI from other sources.  *Alexce v Shineski*, 175, 178 (Fed. Cir. 2011) ("[t]here is no force to the argument that the destruction of duplicative material constitutes spoilation" since its destruction does not present the risk of denying access to relevant information).

The Court requests that the parties conduct further discovery to clarify the issues before it makes a definitive ruling on sanctions.

## IV.    CONCLUSION

While KMBS's Amended Motion for Sanctions persuasively details allegations of spoliation and deletion, supported by forensic examination, reports, and affidavits, and the Court is very concerned about the nature of Defendants' alleged conduct and the

12

impact it could have if it proves to be true after further discovery, the Court cannot impose any sanction without more of a showing by KMBS that the predicate elements of Rule 37(e) have been satisfied.

The Court understands that sanctions are designed to cure and not to punish. The obligation of the Court is to cure with measures no greater than necessary to address prejudice resulting from lost ESI.  Rule 37(e)(1).  Moreover, Rule 37(e)(2) sanctions are available to address the prejudicial effect of lost ESI only if the loss is shown to have been motivated by an "intent to deprive another party of the information's use in the litigation."

The Amended Motion for Sanctions is **DENIED WITHOUT PREJUDICE**.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 31, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 31, 2016.

s/Linda Vertriest
Deputy Clerk