UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KONICA MINOLTA BUSINESS
SOLUTIONS, U.S.A., INC.,

    Plaintiff,                                  Case No. 15-11254
                                                Honorable Victoria A. Roberts

v.

LOWERY CORPORATION, d/b/a
APPLIED IMAGING SYSTEMS, INC., et al.,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 118)**

**I.    INTRODUCTION & BACKGROUND**

Plaintiff Konica Minolta and Defendant Applied Imaging are printing companies and direct competitors who provide similar goods and services in Michigan. Konica alleges the individual defendants breached employment agreements ("Agreement(s)") with it, and then conspired with Applied Imaging to misappropriate its trade secrets, convert its confidential business information, and tortiously interfere with its relationships and business expectancies with its customers and prospective customers.

The Agreements are identical, and contain confidentiality and non-compete provisions. Konica alleges an Agreement with only six of the seven individual defendants: Jon Livingston, Matt Aron, Rob Bell, Linda Boyle, Randy Magner, and Anna Stewart (the "Contract Defendants"). It does not allege an agreement with Steve Hurt.

The Amended Complaint states six claims: Count I – breach of contract against all individual defendants; Count II – Tortious Interference with Contractual Relations

against Applied Imaging, Hurt and Livingston; Count III – Tortious Interference with Business Expectancy; Count IV – Violation of Michigan Uniform Trade Secrets Act ("MUTSA"); Count V – Civil Conspiracy; and Count VI – Statutory Conversion. Counts III-VI are against all defendants.

This matter is before the Court on Defendants' motion for judgment on the pleadings. The motion is fully briefed, and the Court held a hearing on November 16, 2016. Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** the breach of contract claim against Hurt and the statutory conversion claim in its entirety. All other claims are plausible on their face and may proceed.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) tests the legal sufficiency of a plaintiff's complaint. The Court reviews such a motion under the same standard as a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d, 291, 295-96 (6th Cir. 2008). As such, it must accept as true all well-pled material allegations in the complaint and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court may grant a motion for judgment on the pleadings only where the movants clearly establish that no material issue of fact remains unresolved and that they are entitled to judgment as a matter of law. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011); *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 892 (E.D. Mich. 2011). To withstand a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material

elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

### III. ANALYSIS

#### A. Count I – Breach of Contract

Konica Minolta alleges a breach of contract claim against all individual defendants. At the hearing, Konica conceded that no agreement with Hurt exists, and stipulated to dismissing this claim against him. Thus, Count I is dismissed against Hurt.

The underlying Agreements contain a choice of law clause stating that they "shall be interpreted in accordance with the laws of the State of New York." Based on that provision, the parties agree that New York law governs the breach of contract claims.

Contract Defendants say this claim should also be dismissed against them; specifically, they argue that the Agreements are too vague and indefinite to enforce as a matter of law, because the amended complaint says the Agreements attached to it are true and correct copies, "but *the Definitions* called for and referenced as attached [to the Agreements] are not attached to those copies." In support, they cite *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012), which held that "if the terms of [an] agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." Defendants' argument fails for multiple reasons.

First, regardless of whether a separate definitions section exists, Contract Defendants fail to demonstrate that the Agreements, as is, are so vague or indefinite that it is impossible to determine if a breach occurred. Based on this alone, Contract

3

Defendants fail to show that the Agreements are unenforceable as a matter of law under *Staub*.

Moreover, as Konica points out, there is no evidence that a "definitions" attachment actually exists. Notably, certain terms are defined throughout the document (e.g., "Confidential Information" is defined on page one of the Agreements). Even if a separate definitions attachment exists, Contract Defendants would not be entitled to judgment as a matter of law due to Konica not attaching it, especially where it is clear the parties entered into an agreement. The Court will not just throw the claim out.

The breach of contract claim survives against Contract Defendants and is governed by New York law.

### B. Choice of Law Regarding Remaining Claims

Contract Defendants say the choice of law provision in the Agreements dictates that all of Konica's other claims must also be interpreted under New York law. Konica says the contractual choice of law provision applies only to the breach of contract claim, and that Michigan law applies to all other claims. Because this is a diversity action, Michigan choice of law rules apply. *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) ("Federal courts sitting in diversity apply the choice of law provisions of the forum state.").

"Under Michigan law, a tort claim is governed by the law of the forum unless a 'rational reason' exists to displace it." *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001) (quoting *Olmstead v. Anderson*, 428 Mich. 1, 29-30 (1987)). Analyzing whether a rational reason exists to displace Michigan law is a two-step analysis; "(1) [the court] must determine if any foreign state has an interest in

4

having its law applied . . .; and (2) if a foreign state does have an interest in having its law applied, the court must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Miller v. Airborne Exp., Inc.*, No. 07-11035, 2008 WL 2782921, at *3 (E.D. Mich. July 17, 2008) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286 (1997)).

The parties fail to address this standard.  Rather, Contract Defendants say the Court should apply New York law to the remaining claims because they are based on the same alleged underlying conduct as the breach of contract claim.

Contrary to Contrary Defendants' argument, the civil conspiracy and statutory conversion claims are meaningfully different from the breach of contract claim; they could exist independent of the breach of contract claim, and they provide remedies not available under the breach of contract claim.  Moreover, the MUTSA and statutory conversion claims are based on Michigan statutes; New York does not have an interest in having its law applied to claims brought under specific Michigan statutes.  *See MSC.Software, Inc. v. Altair Eng'g, Inc.*, No. 07-12807, 2009 WL 1856222 (E.D. Mich. June 25, 2009).

Lastly, although some facts may overlap between the tortious interference claims and the breach of contract claim, the difference between the claims is not so slight that the choice of law clause in the Agreements constitutes a sufficient reason to apply New York law under the circumstances.  *Cf. Watkins & Son*, 254 F.3d at 611 (finding that the distinction between a breach of contract claim and a claim for promissory fraud – i.e., a promise of future performance that defendant did not intend to keep – was so slight that

the parties contractual choice of law clause provided a sufficient reason to displace the law of the forum state).

In support of their argument, Contract Defendants cite *Johnson v. Ventra Group, Inc.*, 191 F.3d 732 (6th Cir. 1999) and *Citizens Bank v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.*, No. 11-14502, 2012 WL 5828623 (E.D. Mich. July 6, 2012), neither of which is controlling. In *Johnson*, the Sixth Circuit found that a choice of law provision governed all claims, but it never discussed the "rational reason" standard in *Olmstead*. 191 F.3d at 740-41. *Johnson* does not control the Court's analysis of which law governs Konica's tort claims.

In *Citizens Bank*, the court summarily concluded that a contractual choice of law provision governed a conversion claim because it did not meaningfully differ from the breach of contract claim. *Citizens Bank*, 2012 WL 5828623, at *5. The court relied on the Sixth Circuit's decision in *Watkins & Son*, 254 F.3d at 611, which applied the standard that tort claims are governed by the law of the forum state absent a rational reason displacing it, but found that the difference between a breach of contract claim and a tort claim for promissory fraud – i.e., a promise of future performance that defendant did not intend to keep – was so slight that the parties' contractual choice of law clause was "a sufficient reason to displace the law [of the forum state]." *Id.*

Importantly, *Citizens Bank* is a district court opinion and not binding; the Court declines to follow it. Although it relied on *Watkins & Son*, which explicitly applied the "rational reason" standard, *Citizens Bank* did not apply that standard, or even discuss it, in summarily finding that the conversion claim did not meaningfully differ from the breach of contract claim.

6

Contract Defendants also argue that New York law governs the tort claims based on § 187(2) of the Restatement (Second) of Conflict of Laws, because New York has a "substantial relationship" to the parties. However, courts apply § 187(2) to determine whether a contractual choice of law provision is valid. *Johnson*, 191 F.3d at 738-39. No party here challenges the validity of the choice of law provision in the Agreements; only its breadth. As stated above, the applicable standard dictates that Michigan law applies to Konica's tort claims unless a 'rational reason' exists to displace it. *Watkins & Son*, 254 F.3d at 611.

No rational reason exists to displace Michigan law. Other than the choice of law provision in the Agreements, the only other interest New York has in having its law applied is based on Konica being a New York corporation. However, this is a neutral factor because Defendants are all Michigan citizens and Konica's principal place of business is in New Jersey. All other considerations weigh in favor of Michigan law.

The Agreements were signed in Michigan; the Contract Defendants performed under the Agreements in Michigan; the breach occurred in Michigan; and despite being incorporated in New York, Konica brought this suit in Michigan, based on Michigan law. Moreover, Contract Defendants say New York has not adopted the Uniform Trade Secret Act, and all of Konica's other tort claims would be barred under New York law because they arise out of the same facts as its breach of contract claim. Because the alleged torts occurred in Michigan, Michigan has an interest in allowing Konica to plead a MUTSA claim and the other tort claims that are actionable under Michigan law. Michigan's interests are significantly greater than New York's; no rational reason exists to apply New York law to the tort claims.

The Court applies Michigan law to Counts II through VI. Contract Defendants' arguments that these claims fail under New York law are not applicable, and will not be addressed.

### C. Preemption of Konica's Tort Claims (Counts II, III, V, and VI)

Defendants say MUTSA preempts Counts II, III, V, and VI. Konica Minolta disagrees.

"Section 8 of the Michigan Uniform Trade Secrets Act ("MUTSA") preempts claims based on conflicting state tort law and provides civil remedies for misappropriation of trade secrets." *American Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 884 (E.D. Mich. 2015); Mich. Comp. Laws § 445.1908(1). The MUTSA does not preempt "[o]ther civil remedies that are not based upon misappropriation of a trade secret." M.C.L. § 445.1908(2).

"The critical inquiry for courts in determining whether a claim is displaced by the MUTSA is whether the claim in question is based solely on the misappropriation of a trade secret." *American Furukawa*, 103 F. Supp. 3d at 884. If a claim is based solely upon the misappropriation of a trade secret, MUTSA displaces it, and it must be dismissed. *Id.* On the other hand, causes of action that are not dependent on trade secrets are not displaced. *Id.*

In determining whether the MUTSA displaces a specific claim, the Court will look at the allegations in the complaint to determine if the claim states any "wrongful conduct independent of the misappropriation of trade secrets." *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 950 (W.D. Mich. 2003).

8

### 1. Tortious Interference Claims (Counts II and III)

The elements of tortious interference with a contract are: (1) the existence of a contract; (2) a breach; and (3) an unjustified instigation of the breach by the defendant. *Id.* at 949 (citation omitted). Konica alleges that Applied Imaging, Livingston and/or Hurt induced Contract Defendants to breach their Agreements. Because the alleged inducement of Contract Defendants to breach their Agreements is wrongful conduct by itself, this claim is not based solely on misappropriation of trade secrets.

To establish a claim for tortious interference with business expectancy, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy by the defendant; (3) intentional interference by the defendant which induces or causes a breach or termination of the relationship or expectancy; and (4) damage to the plaintiff. *Id.* (citation omitted). In support of this claim, Konica Minolta alleges Defendants wrongfully interfered with its business relationships with customers and prospective customers by soliciting those customers to not do business with it. As Konica correctly states, tortious solicitation of customers constitutes wrongful conduct independent of misappropriation.

Because Konica's tortious interference claims are not based "solely on the misappropriation of a trade secret," MUTSA does not displace them. *American Furukawa*, 103 F. Supp. 3d at 884.

### 2. Count V – Civil Conspiracy

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means." *American Furukawa, Inc. v. Isthihar Hossain, HT Wire & Cable*

*Americas, LLC*, No. 14-13633, 2016 WL 3444079, at *12 (E.D. Mich. June 23, 2016) ("*American Furukawa II*").

Because Konica correctly states that it can succeed on this claim by showing a wrongful agreement to, among other things, engage in tortious conduct independent of any misappropriation of trade secrets, it is not preempted by the MUTSA. *See id.* at *6.

### 3. Count VI – Statutory Conversion

Common law conversion under Michigan law "is established by showing any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015), *aff'd*, 646 Fed. Appx. 418 (6th Cir. 2016) (citation and internal quotation marks omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.* (quoting *Dep't of Agric. v. Appletree Mktg. LLC*, 485 Mich. 1, 14 (2010)). To prove statutory conversion in Michigan, a plaintiff must establish a common law conversion claim and show "that the defendant had 'actual knowledge' of the converting activity." *Id.* (citation omitted).

Konica Minolta's statutory conversion claim alleges Defendants "stole and converted [its] confidential and trade secret information, including lists of customers and accounts. . . ." Defendants say MUTSA preempts this claim because it is based on misappropriation of trade secrets. Konica says its conversion claim is not be preempted because it identified several different types of information Defendants converted, "such as customer account information, pricing/negotiation strategies, customer lists, general customer and potential customer information and records, customer contracts, financial

10

data, software product specifications, pricing information, personnel information, <u>and</u> trade secrets." (Doc. 127, PgID 2031, n. 2) (emphasis in original).

Contrary to Konica's contention, its conversion claim is based solely on the misappropriation of trade secrets. The Agreements define "Confidential Information" as

> confidential and proprietary business information of [Konica], including information relating to [its] customers, potential customers, suppliers and the management of its business. Confidential Information also includes, but is not limited to, [Konica's] price lists, customer lists, customer records, promotional ideas and strategies, service policies and information, sales policies and information, marketing policies and information, supplier information, territory information, policies and procedures and any other information not generally available to the public or treated by [Konica] as confidential.

Agreements, p. 1. Moreover, the Agreements expressly acknowledged that Konica considered this information trade secrets: "all Confidential Information shall remain the exclusive property of the owner thereof (whether or not Konica) and constitutes valuable *trade secrets* of its owner." *Id.* at p. 2 (emphasis added).

Because the confidential business information alleged in the amended complaint is the same as the confidential information that Konica described as trade secrets in the Agreements, it is clear that the conversion claim is based solely on the misappropriation of trade secrets and preempted by MUTSA. *See Polar Molecular Corp. v. Amway Corp.*, No. 1:07-CV-460, 2007 WL 3473112, at *6-*7 (W.D. Mich. Nov. 13, 2007) (holding that MUTSA preempted a conversion claim upon finding that a confidentiality agreement applied only to trade secrets because the non-disclosure obligation did not apply to information know "prior to disclosure" or "known to the general public").

Konica's argument that some of the confidential information converted may later be deemed not to constitute a trade secret does not save its conversion claim. *See*

11

*Bliss*, 270 F. Supp. 2d at 948-49 (finding that "the disputed status of information as a trade secret does not preclude a court from determining whether a claim or claims are displaced by MUTSA"). "[A]llowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the [M]UTSA." *Id.* at 949. Because Konica's conversion claim is based on Defendants wrongfully taking confidential information – all of which *arguably* constitutes a trade secret – it is preempted by MUTSA. *Id.*; *see also Lube USA Inc. v. Michigan Mfrs. Serv. Inc.*, No. 07-14-284, 2009 WL 2777332, at *9 (E.D. Mich. Aug 27, 2009) ("To be clear: to the extent that MMS's tortious interference claim rests upon the misappropriation of *confidential customer lists*, the claim is preempted.") (emphasis added).

MUTSA preempts Konica's statutory conversion claim.

### 4. Extent Based on Trade Secrets

Although Konica's civil conspiracy and tortious interference claims survive preemption at this time, it cannot recover under these claims for conduct based on misappropriation of trade secrets. Defendants may raise this issue again if, after discovery, it appears that a claim is based solely on misappropriation of trade secrets.

### D. Intra-Corporate Conspiracy Doctrine

Defendants say the intra-corporate conspiracy doctrine bars Konica's civil conspiracy claim. Konica says an exception to this doctrine saves its claim because the individual defendants acted outside the scope of their employment with Applied Imaging.

A conspiracy requires two or more actors, people or entities. *Hull v. Cuyahoga Valley Jt. Voc. Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Under the intra-corporate conspiracy doctrine, a corporation cannot conspire with itself or with its own agents or employees, and the acts of an agent are generally considered the acts of the corporation. *Upton v. City of Royal Oak*, 492 Fed. Appx. 492, 504 (6th Cir. 2012) (citation omitted). However, an exception exists where employees act outside the scope of their employment; an employee acting outside the scope of his or her employment can conspire with a corporation. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). This "scope of employment" exception "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Id.*

Defendants say "all of the conduct described in the Amended Complaint occurred while the individual defendants were employees of [Applied Imaging]."

Although it appears that the wrongful conduct alleged occurred while the individual defendants were working for Applied Imaging – and their conduct would more likely be defined as "collaborative acts done in pursuit of an employer's business" than "private acts done by persons who happen to work at the same place" – nothing in the complaint shows that all of the individual defendants' actions were *indisputably* within the scope of their employment with Applied Imaging, such that the intra-corporate conspiracy doctrine applies as a matter of law. Moreover, the intra-corporate conspiracy doctrine is a defense; Konica need not plead that the individual defendants' acts were outside the scope of their employment. Defendants may raise this again after discovery.

## IV. CONCLUSION

Defendants' motion for judgment on the pleadings (Doc. 118) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** the breach of contract claim against Hurt and the statutory conversion claim in its entirety. All other claims are plausible on their face and may proceed.

**IT IS ORDERED**.

S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 18, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 18, 2016.

s/Linda Vertriest
Deputy Clerk